# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**NETCHOICE, LLC**                                                                                        **PLAINTIFF**

v.                                **CASE NO. 5:23-CV-05105-TLB**

**TIM GRIFFIN, in his Official Capacity**
**as Attorney General of Arkansas**                                                       **DEFENDANT**

## DECLARATION OF DAVID BOYLE

I, David Boyle, hereby declare as follows:

1. I am over 18 years of age and am competent in all respects to make this Declaration. I possess personal, firsthand knowledge of the assertions made herein.

2. I am currently employed as Senior Director, Product at Snap Inc. ("Snap"). I have held this role since 2018. I make this declaration based on personal knowledge including information and belief obtained from performing my job duties in the ordinary course of business.

3. Snap's flagship application is Snapchat, a camera and communications service that allows users to communicate with friends and family using text, audio and video calls, photos, and short videos. Snapchat is typically used for direct, private communications between small groups of people who already know each other in real life. By default friendship on Snapchat is "bidirectional," meaning that someone has to accept you as a friend in order to communicate with you.

4. Snapchat opens to the user's camera and allows the user to send texts and images (called "Snaps") that delete by default after being opened. This default ephemerality feature is designed to mirror real-life interactions. It affords users a digital way to show a more authentic, unpolished, and spontaneous side of themselves. Snapchat also offers users a variety of tools to add effects to their photos, such as adding puppy dog ears to a face or augmented reality effects

on a landmark (like rainbows coming out of the Eiffel tower). Since October 2013, users have been able to compile photos and videos into "Stories" generally available for 24 hours which, by default, are viewable only by a user's friends. Through Snapchat's "Discover" feature, users also have access to vetted content from trusted partners (e.g., NBC News). Snap also more recently introduced "Spotlight," a feature that allows users to make videos that anyone can view. Over 383 million people use Snapchat every day to communicate with friends and stay in touch.

5. When creating an account on Snapchat, users are required to disclose their date of birth, as well as to provide either an email address or phone number. Users under age 13 are not allowed to create an account. If Snap learns that a user is under 13, it takes action to terminate the account.

6. Snapchat takes numerous precautions to protect minors (age 13-17) who use the service. For example, by default, profiles for users under 18 are private and teens can only receive messages from users with whom they are already friends on the platform or already have in their phone's contacts. Snapchat empowers users to report harmful images or videos, and it employs technology to identify known illegal images and videos of child sexual abuse materials, which it then reports to the relevant authority. Snapchat also takes steps to safeguard the mental health of its users. For instance, in 2020, Snap launched Here For You, which surfaces resources from expert organizations to Snapchat users when they search for a range of mental-health related topics.

7. In addition, Snap offers parents insight into their teens' use of the platform. Through Snapchat's Family Center, a parent or guardian can install Snapchat on their phone and then link to the minor's account to see which friends the teen is communicating with on Snapchat. Family Center is designed to mirror the oversight that parents have over their teens' actions in real life. For instance, parents typically know who their teen spends time with in-person, but they

typically do not hear all the in-person conversations that their teens have with their friends. Similarly, Family Center does not show parents the substance of teens' communications on Snapchat.

8. Snap does not believe that SB 396 applies to Snapchat, as Snapchat's predominant purpose is as a direct messaging service. But one of the bill's co-sponsors, Senator Tyler Dees, specifically stated that the bill is intended to target Snapchat. *See* Brian Fung, *Arkansas Governor Signs Sweeping Bill Imposing a Minimum Age Limit for Social Media Usage*, CNN.com (Apr. 12, 2023), https://www.cnn.com/2023/04/12/tech/arkansas-social-media-age-limit/index.html. Snap therefore faces a significant risk of litigation if it does not comply with SB 396's age-verification and parental consent requirements. And even if Snap attempts to comply with these requirements, it may still face lawsuits over alleged noncompliance.

9. SB 396's timeline for compliance is unusually quick, particularly because it requires companies to "use a third party vendor" to perform age verification. Were Snap required to comply with these requirements, the timeline provided (only a few months) may not even leave enough time to verify that any third-party vendor is capable of complying with Snap's privacy and data security requirements. Snap takes its privacy and data security requirements very seriously. There are limited vendors who meet our requirements and can handle our scale of users.

10. If the law were to apply to Snap, SB 396 also would place Snap in a Catch-22 with respect to the retention of user information. It would be infeasible to operate age-verification and parental-consent systems without retaining information about individuals who seek to access Snapchat, so as to (1) facilitate future access to Snapchat by individuals who prove that they are 18 years old or have parental consent, and (2) block individuals under 18 who do not have parental consent. It would also be important to retain such information to prove compliance with the law.

But SB 396 expressly prohibits any "commercial entity," including a "third party vendor," from "retain[ing] any identifying information of an individual after access to the social media platform has been granted." *See* SB 396, §1 (to be codified at Ark. Code §4-88-1104). Thus, it appears practically impossible for Snap to comply with the law's age-verification and parental-consent requirements while simultaneously complying with its restrictions on the retention of users' identifying information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _____ day of July, 2023.
Jul 5, 2023

DocuSigned by:
*David Boyle*
David Boyle

4