IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**NETCHOICE, LLC**                                                                                       **Plaintiff**

**Case No. 5:23-cv-05105-TLB**

**TIM GRIFFIN, in his official capacity
as Attorney General of Arkansas**                                                             **Defendant**

### THE ATTORNEY GENERAL'S BRIEF ON THIRD-PARTY STANDING

On August 7, 2023, the Court ordered the parties to brief "the subject of third-party standing." In this case, NetChoice's members do not have third-party standing to bring suit on behalf of current or future social-media users. Even if they did, NetChoice's members' third-party standing is an exception to the general rule that plaintiffs must bring their own claims, so the Court should not extend that exception still further by allowing NetChoice to assert third-party standing on its members' behalf, essentially creating a doctrine of fourth-party standing.

1. **NetChoice's members do not have third-party standing to assert the claims of current or future social-media users.**

NetChoice's members have not established (and cannot establish) the third-party standing requirements. NetChoice must demonstrate three things for third-party standing, even when asserting a First Amendment claim: (1) its members "suffered an injury in fact," (2) its members have "a close relation to the" third party, and (3) the third party "was hindered in his ability to protect his own interests." *Hodak v. City of St. Peters*, 535 F.3d, 899, 904 (8th Cir. 2008).

*First, NetChoice has not asserted that Act 689 violates its members' First Amendment rights.* NetChoice has not pleaded the simple claim that Act 689 violates its members' First Amendment rights. As the Ninth Circuit has held, if plaintiffs "do not assert *their own* legal rights"

under the First Amendment, they lack "standing to bring [a] claim" on behalf of third parties. *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (cleaned up); *see also Davis v. Colerain Twp.*, 2022 WL 4351074, at *5 (6th Cir. 2022) (same); *cf. Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 798–802 (8th Cir. 2006) (explaining that plaintiffs must demonstrate their own Article III standing before bringing a First Amendment overbreadth claim). Because NetChoice has not first asserted that its members' First Amendment rights were violated, it cannot do so on behalf of third parties. *Cf.* Appellees' Br. at 14, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) (No. 86-1034), 1998 WL 881221, at *9 (asserting that the booksellers had standing because the challenged law "obviously restrict[s] [the booksellers'] own First Amendment activities").

*Second, NetChoice's members do not have a sufficiently close relation with third-party users.* NetChoice's members do not have a sufficiently close relationship with unknown, potential, hypothetical future users. For example, in *Kowalski v. Tesmer*, attorneys attempted to assert the due-process and equal-protection rights of potential future clients, but the Supreme Court held that there was not a sufficiently close relation based on "the *hypothetical* attorney-client relationship," even though there was one for an "*existing* attorney-client relationship." 543 U.S. 125, 130–31 (2004). In fact, the attorneys and hypothetical clients had "no relationship at all." *Id.* at 131. The same is just as true here: NetChoice's members do not have any relationship with potential future users.

With current users, NetChoice and its members have conflicting interests that override any close relation they would otherwise have. *Compare Craig v. Boren*, 429 U.S. 190, 195 (1976) (holding, in an equal-protection claim, that "a vendor with [Article III] standing . . . is entitled to assert those concomitant rights of third parties"), and *In re Grand Jury Subpoena, No. 16-03-217*,

2

875 F.3d 1179, 1183 (9th Cir. 2017) (holding, in a First Amendment case, that a website operator had a sufficiently close relationship with its users for third-party standing); *with Ben Oehrleins & Sons & Daughters, Inc. v. Hennepin Cnty.*, 115 F.3d 1372, 1381 (8th Cir. 1997) (holding, in a Commerce Clause case, that not all seller-purchaser relationships are sufficiently close because, if all such relationships qualified, the "consumers could always assert the [constitutional] claims of the businesses from whom they purchase goods or services" or vice versa).

Act 689 protects children from sexual exploitation, which parents and minor users would likely favor. *See* Def.'s Br. 13–18, ECF No. 34. Social-media companies are businesses that seek a profit, and they do not have the same concerns as parents and children. This is a "substantial conflict" of interests that would make NetChoice an "[in]effective proponent[] of the rights of the [users]" and thus defeats any potentially close relationship. *Gold Cross Ambulance & Transfer v. City of Kan. City*, 705 F.2d 1005, 1016 (8th Cir. 1983); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 16 (2004) (explaining that when a plaintiff's and third party's "interests . . . are not parallel" but "potentially in conflict," third-party standing is inappropriate); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2275 n.61 (2022) (citing opinions that identify conflicts of interest should typically bar third-party standing). Therefore, NetChoice fails the second prong.

*Third, social-media users are not hindered from bringing their own claims.* It is NetChoice's burden to show that the third parties are hindered, which "is a question of 'the likelihood and ability of the third parties . . . to assert their own rights.'" *Hodak*, 535 F.3d at 904 (alteration in original) (quoting *Powers v. Ohio*, 499 U.S. 400, 412 (1991)). The Eighth Circuit has not relaxed the requirement, though it might in limited circumstances. *Compare Hodak*, 535 F.3d at 904 (making no reference to a relaxed analysis); *with Sec'y of State of Md. v. Joseph H. Munson*

3

*Co., Inc.*, 467 US. 947, 956 (1984) (identifying that in only certain "situations" there are "practical obstacles [that] prevent a party from asserting rights on behalf of itself," which may necessitate a "relaxed" analysis). And even those courts that relax it further than the Eighth Circuit do not do so in all situations. *See Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000) (facial overbreadth challenge); *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 835 (6th Cir. 2004) (vagueness or overbreadth challenges); *N.J. Bankers Ass'n v. Att'y Gen. N. J.*, 49 F.4th 849, 860 (3d Cir. 2022) (when a law "substantially abridges" First Amendment rights). In any event, "[t]he fact that this principle [might be] relaxed somewhat in the First Amendment context does not eviscerate it." *Coggeshall v. Mass. Bd. of Registration Psych.*, 604 F.3d 658, 666 (1st Cir. 2010).

NetChoice fails the third prong because it has "plead[ed] nothing to support the notion that [users are] hindered from protecting [their] own interests." *Alamo Forensic Servs., L.L.C. v. Bexar Cnty.*, 861 F. App'x 564, 569–70 (5th Cir. 2021). In fact, NetChoice's briefing makes clear that it believes users are more than capable of protecting their own interests. *See, e.g.*, Pl.'s Br. 10, ECF No. 18 (asserting that users have power to "generally choose who they follow" and use the platform's "tools to exclude content they wish to avoid"); *id.* at 30 (arguing that under the status quo parents are sufficiently "empower[ed]" to protect their children). That's enough to find that the third prong cuts against NetChoice.

Even so, it might be that social-media users favor Act 689, which protects children from sexual exploitation. *See* Def.'s Br. 13–18, ECF No. 34. And if the third parties' reluctance to suing is because "they like [the law]" because it "protects them," NetChoice cannot gain third-party standing. *Harris v. Evans*, 20 F.3d 1118, 1124 (11th Cir. 1994).

### 2. Even if NetChoice's members have third-party standing, NetChoice cannot co-opt it to assert fourth-party standing.

Assuming the Court finds that NetChoice's members can assert third-party standing on behalf of users, NetChoice cannot bring such a derivative third-party claim on behalf of its members. In *Hunt v. Washington State Apple Advertising Commission*, the Supreme Court held that associations can bring suit on behalf of its members when three elements are met: (1) "its members would otherwise have standing to sue *in their own right*"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 432 U.S. 333, 343 (1977) (emphasis added).

For the purposes of a third-party suit on behalf of its members, NetChoice fails the first element because its members' standing would not be in *the members'* own rights, but in the rights of the *third-party users*. The "general rule" is that plaintiffs must assert their own claims, and "[t]hird-party standing is an exception" to that rule. *Hodak*, 535 F.3d at 904. *But see Penn. Psych. Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 291–93 (3d Cir. 2002) (holding that associations can assert the third-party standing of their members and citing two cases from the Sixth and D.C. Circuits in support). The Court should not extend the third-party standing exception to organizations asserting their members' rights and, in turn, give NetChoice fourth-party standing.

### Conclusion

The Court should find that NetChoice and its members to do not have third-party standing to assert social-media users' claims.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By: John Payne
Ark. Bar No. 97097
Deputy Attorney General

Jordan Broyles
Ark. Bar No. 2015156
Senior Assistant Attorney General

Noah P. Watson
Ark. Bar No. 2020251
Senior Assistant Attorney General

Justin Brascher
Ark. Bar No. 2023029
Assistant Attorney General


Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 503-4335
(501) 682-2591 fax
john.payne@arkansasag.gov
jordan.broyles@arkansasag.gov
noah.watson@arkansasag.gov
justin.brascher@arkansas.gov

*Attorneys for Tim Griffin*