IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**NETCHOICE, LLC**                                                                                           **PLAINTIFF**

v.                                     **CASE NO. 5:23-cv-05105-TLB**

**TIM GRIFFIN, in his official capacity
as Attorney General of Arkansas**                                                         **DEFENDANT**

## JOINT RULE 26(f) REPORT

Plaintiff NetChoice, LLC ("NetChoice") and Defendant Tim Griffin, as Attorney General of Arkansas (collectively, the "Parties"), by and through their respective attorneys, submit the following information in compliance with Federal Rule of Civil Procedure 26(f), Local Rule 26.1, and this Court's scheduling order, *see* Dkt.46, ¶3.

    **1.**    **Plaintiff's Statement of the Case.** NetChoice challenges the constitutionality of Arkansas Act 689 of 2023, which (i) requires "social media companies" to verify the age of every individual who attempts to create an account to use their services; and (ii) prohibits these companies from allowing a minor to create an account without first obtaining parental consent. *See* Ark. Code Ann. §4-88-1401 to -1404. The essential facts are undisputed: NetChoice is a trade association of Internet companies that offer online services such as Facebook, Instagram, and X (formerly known as Twitter); these online services are widely used by adults and teenagers alike; and parents who wish to restrict or monitor their teens' use of online services have numerous options at their disposal. These undisputed facts are reflected in the unopposed evidentiary submissions that this Court received in connection with NetChoice's motion for a preliminary injunction. *See* Dkt.44 at 4, 13-20. The Court granted that motion on August 31, 2023, holding that NetChoice is likely to succeed on the merits of its two primary legal theories. *See id.* at 35, 48. First, the Act violates the First Amendment because it burdens protected speech and is not

narrowly tailored to achieve the State's asserted interest in "protecting minors." *See id.* at 35-48. As the Court explained, the Act is vastly overinclusive because it "simply impedes access to content writ large," *id.* at 47; and grossly underinclusive because it does not apply to numerous online services that offer the same allegedly harmful materials or interactions as the regulated services, *see id.* at 43-45. Second, the Act "is unconstitutionally vague." *Id.* at 32. The Act's definitions of "social media company" and "social media platform," as well as its many content-based carveouts from those definitions, fail to give NetChoice members adequate notice of whether the Act applies to them. *See id.* at 32-35. On top of that, the Act is preempted by the Children's Online Privacy Protection Act, 15 U.S.C. §6501 *et seq.*, and unconstitutionally regulates conduct that takes place entirely outside of Arkansas. *See* Dkt.2, ¶¶59-63, 65-71. NetChoice seeks a declaration that Act 689 is unconstitutional; a permanent injunction against its enforcement; and costs and reasonable attorney's fees. *See* Dkt.2 at 32-33.

    **2.**    **Defendant's Statement of the Case.** The Social Media Safety Act protects Arkansas minors from harmful sexual predators online by requiring every person who creates a social-media profile to verify their age. *See* Ark. Code Ann. §§ 4-88-1401 to -1404. The process takes less than sixty seconds on average and retains none of the person's personally identifiable information. Dkt.34, Ex. 1, ¶ 73. If the person is a minor, a parent or guardian must provide permission for the minor to create the account. Ark. Code Ann. §§ 4-88-1401 to -1404. Similarly, federal law requires parental consent for Internet companies to collect or use personal information from children under age 13. *See* 15 U.S.C. § 6502. NetChoice, a trade association whose members include Meta, TikTok, and X (formerly known as Twitter), claims that the Act is unneeded, in part, because of the alleged restrictions social-media companies place on minors' access to social-media platforms. Dkt. 18 at 15–20. But whatever alleged restrictions exist, they are ineffective: Children

still face a multitude of preventable harms, including kidnapping, sex trafficking, sexploitation, access to illicit drugs, abuse, cyberbullying and self-harm. Affidavit of Karen Farst, ¶¶ 10–15.

The Act does not restrict speech, but rather it is a restriction on conduct. Dkt. 34 at 6–9. Like the multitude of laws restricting minor's access to bars, nightclubs, and casinos, the Act merely restricts where minors can *be* based on the harm the place can cause. *Id.* The Act does not restrict what people can say or hear. *Id.* The Act is thus subject to rational-basis review. *Id.* If the Act is a restriction on speech, it is a narrowly tailored, content-neutral restriction that only requires intermediate scrutiny. *Id.* at 9–13. The Act is also not unconstitutionally vague and is not federally preempted. *Id.* at 20–21.

3. **Are there any Objections pursuant to Rule 26(a)(1)(c) to providing required Initial Disclosures?**

Plaintiff's Position: Yes. NetChoice believes this case is appropriate for resolution as a matter of law, and NetChoice therefore intends to file an early dispositive motion. To conserve the Court's and the parties' resources, NetChoice believes all discovery, including initial disclosures, should be stayed pending resolution of its dispositive motion.

Although NetChoice does not believe discovery is appropriate in this case and seeks a stay of discovery, the Parties conducted a full Rule 26(f) conference. The responses herein represent NetChoice's perspective in the event the Court does not enter a stay of discovery.

Defendant's Position: Defendant does not have any objections to providing initial disclosures. This case is not appropriate for a stay of all discovery or for immediate resolution. The Social Media Safety Act regulates social-media companies. No social-media company is a party to this case. Skipping discovery would allow NetChoice's members to hide behind the veil of a Washington D.C. trade association—giving only the information and documentation that they deem necessary for NetChoice's filings and leaving the Defendant unable to conduct *any*

3

meaningful inquiry into the materials NetChoice places in the record, including the veracity of the affidavits already submitted.

Conducting discovery as outlined below will not prejudice NetChoice. Instead, it would be prejudicial to Defendant. With discovery, this matter can be fully heard, and the Defendant will have a fair chance to respond to any dispositive motion. *See, e.g.*, *Hess v. Citibank, (S.D.), N.A.*, 459 F.3d 837, 846 (8th Cir. 2006).

4. **Are there any Objections to the timing of Rule 26(a) Initial Disclosures?**

Yes. As noted above, NetChoice believes this case is appropriate for resolution as a matter of law. Defendant, however, does not object to the current timing of Rule 26(a) disclosures.

5. **Agreed Document Productions.**

The Parties agree to produce the declarations and other exhibits and materials exchanged in conjunction with the Preliminary Injunction briefing and hearing. No other document productions are agreed to at this time.

6. **Discovery**

> **6(a). How many months are reasonably necessary to complete discovery—as measured from the date of the Case Management Hearing?**

NetChoice does not believe discovery is necessary or appropriate. In the event that the case proceeds to discovery, however, NetChoice does not object to the timeframe Defendant proposes below.

Defendant proposes completing discovery 6 months from the date of the Case Management Hearing.

> **6(b). Do the Parties seek to alter (increase or decrease) the maximum number of written discovery requests allowed by the Rules? If so, please explain.**

Not at this time.

**6(c). Do the Parties seek to increase the maximum number of depositions allowed per side? If yes, please explain the necessity and state how many depositions per side are proposed.**

Not at this time.

**6(d). Please characterize the scope and extent of electronic discovery contemplated by the Parties as follows: (i) none; (ii) fairly simple and routine; or (iii) complex. If your answer is "Complex," then please complete and attach Schedule A.**

At this time, the Parties characterize the scope and extent of electronic discovery as simple and routine. If issues arise or if electronic discovery becomes complex, the Parties agree to meet and confer and to alert the Court to any issues that cannot be resolved by the Parties.

**6(e). Do you anticipate the use of Expert Witnesses at trial? If so, state proposed dates by which the Parties will be in a position to provide initial and rebuttal expert disclosures pursuant Rule 26(a)(2).**

NetChoice does not believe a trial will be necessary. In the event that the case proceeds to trial, however, NetChoice does not object to Defendant's proposed timeframe for providing initial expert disclosures and rebuttal expert disclosures. NetChoice does not anticipate the use of expert witnesses at trial but reserves the right to call such witnesses.

Defendant does anticipate the use of expert witnesses at trial. Defendant proposes providing initial expert disclosures 4 months from the date of the Case Management Hearing, with rebuttal expert disclosures due 30 days after that.

**6(f). Do the Parties presently contemplate the need for a protective order prior to the exchange of documents or information?**

Yes, the Parties anticipate the need for a protective order. The Parties intend to submit an agreed order in advance of the Case Management Hearing.

**7. State the Parties' best estimate as to the number of days reasonably necessary to fully try the case.**

Four days.

8. **State whether 90 days—measured from the Case Management Hearing—is a sufficient amount of time to Add Parties and/or Amend Pleadings.**

Yes.

9. **Settlement Prospects.**

No prospects of settlement.

10. **Special Issues and Schedules.**

Not applicable.

11. **Have all corporate Parties filed the disclosure statement contemplated by Fed. R. Civ. P. 7.1?**

Not applicable.

12. **Magistrate Judge Jurisdiction. Have all counsel discussed with their clients and each other the option of consenting to Magistrate Judge Jurisdiction?**

The Parties do not consent to magistrate judge jurisdiction.

Date: October 23, 2023

Respectfully submitted,

Marshall S. Ney, Ark. Bar No. 91108
Katherine C. Campbell, Ark. Bar No. 2013241
Friday, Eldredge & Clark, LLP
3350 S. Pinnacle Hills Pkwy, Suite 301
Rogers, AR 72758
Telephone: (479) 695-6049
Facsimile: (501) 244-5389
mney@fridayfirm.com
kcampbell@fridayfirm.com

Paul D. Clement (admitted *pro hac vice*)
Erin E. Murphy (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
Joseph J. DeMott (admitted *pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street

Tim Griffin
Attorney General

Justin Brascher Ark. Bar No. 2023029
Noah Watson Ark. Bar No. 2020251
Jordan Broyles Ark. Bar No. 2015156
John Payne Ark. Bar No. 97097
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Telephone: (501) 503-4335
Justin.Brascher@arkansasag.gov
Noah.Watson@arkansasag.gov
Jordan.Broyles@arkansasag.gov
John.Payne@arkansasag.gov

*Attorneys for Defendant*

Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
joseph.demott@clementmurphy.com

*Attorneys for Plaintiff*