IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NETCHOICE, LLC                                                                                              **Plaintiff**

Case No. 5:23-cv-05105-TLB

TIM GRIFFIN, in his official capacity
as Attorney General of Arkansas                                                                 **Defendant**

THE ATTORNEY GENERAL'S RESPONSE TO
NETCHOICE'S MOTION FOR A STAY IN DISCOVERY

Plaintiff NetChoice requests a preemptive stay in discovery pending a "forthcoming dispositive motion." But a hypothetical, unfiled motion isn't grounds for a discovery stay. Indeed, it's not clear how this Court could even assess the likelihood of success of an unseen motion and determine that's grounds for a discovery stay. Unless—as Plaintiff apparently believes—the issuance of a preliminary injunction always warrants a stay of discovery; an odd position since a preliminary injunction is supposed to freeze things in place while the parties proceed with the case. Accordingly, this Court should reject Plaintiff's motion.

**Standard of Review**

Plaintiff has not identified any cases in which a plaintiff requested and was granted a stay of discovery. Instead, it cites only cases where a defendant requested the stay. That underscores the unique and strange nature of this request: NetChoice brought this suit, and now wants to avoid the natural course of litigation. A court can stay discovery in a case "for good cause" to "protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Generally, the filing of a dispositive motion, by itself, does not constitute "good cause" to stay discovery. *See Marlon Blackwell Architects, P.A. v. HBG Design, Inc.*, No. 4:19-CV-00925 KGB, 2020 WL 7007993, at *1 (E.D. Ark. Nov. 18, 2020). Federal courts consider various factors

when determining whether a stay is appropriate. *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. CIV. 13-1356 ADM/FLN, 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013). These factors include "(1) whether the movant has shown a likelihood of success on the merits of the dispositive motion; (2) hardship or inequity to the moving party if the matter is not stayed; (3) prejudice to the non-moving party [if the matter is stayed]; and (4) the conservation of judicial resources." *Jason M. Hatfield, P.A. v. Ornelas*, No. 5:22-CV-05110, 2022 WL 3129069, at *1 (W.D. Ark. Aug. 4, 2022). Courts can also look at "the breadth of the pending discovery; the balance of harms in delaying discovery against the possibility that the motion to dismiss will dispose of the case; and the public interest." *Id.* All of these factors weigh in favor of the Defendant.

**1. NetChoice hasn't shown that it's likely to succeed on an unfiled motion.**

NetChoice asks this Court to take its word that it is likely to succeed on a motion yet to be filed, so the stay should be granted. It presumes success only because this Court granted it a preliminary injunction. Plaintiff's position is flawed, and this Court should deny NetChoice's motion.

First, this Court can't determine Plaintiff is likely to succeed on a phantom motion. Courts in the Eighth Circuit routinely decline to make rulings based on hypothetical or anticipated motions. *United States v. McCullar*, No. 4:19-CR-3017, 2020 WL 6741658, at *1 (D. Neb. Nov. 17, 2020) (declining to extend the deadline to file a §2255 motion until the motion is filed.) Such a determination would essentially amount to an advisory opinion, which Courts do not have the authority to issue. *See Stogsdill v. Elkins*, 2008 WL 2783477, at *1 (E.D. Ark. July 7, 2008).

Second, recognizing that, Plaintiff argues that this Court's preliminary injunction order means that whatever the dispositive motion Plaintiff eventually files, it's likely to succeed because this court already granted a preliminary injunction. The purpose of a preliminary injunction is to "maintain the status quo" and stop irreparable harm while a case proceeds. *Devose v. Herrington*,

42 F.3d 470, 471 (8th Cir. 1994). The status quo then remains in place until the Court has an opportunity to grant full effective relief. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). Meanwhile, the case proceeds to discovery, and eventually a trial, so that the factual record can be fully developed and a proper decision on the merits can be reached by the Court. Discovery rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement. *Weiss v. Amoco Oil Co.*, 142 F.R.D. 311, 313 (S.D. Iowa 1992). To say that the granting of a preliminary injunction means that discovery is not necessary undermines the entire point of a preliminary injunction.

Therefore, NetChoice has not met this first requirement. The cases NetChoice cites involved a *pending*, not *hypothetical*, motion. No pending dispositive motion exists here, so this factor weighs in favor of the Defendant.

2. **NetChoice will not be overly burdened by discovery.**

NetChoice argues as a part of this factor that the case is purely an issue of law, and therefore no discovery is necessary. Yet NetChoice's own filings and this Court's order demonstrate otherwise. As part of its Motion for Preliminary Injunction, NetChoice attached four affidavits, each from someone who works for one of NetChoice's members. *See* Dkt.17, at 5–52. These affidavits provided factual evidence that NetChoice relied on in its arguments[1] and that the Court relied on in its order granting a preliminary injunction[2]. NetChoice's position means that it can place whatever factual evidence it wants into the record, while depriving the Defendant of any opportunity to probe the truthfulness of that evidence or the credibility of the affiants. This is particularly

---

[1] *See* Dkt. 18, at 3-4, 9-11, 38.
[2] *See* Dkt. 44, at 14, 18-19, 23-24.

important when a number of the affiants claim that NetChoice's members take sufficient security measures to protect children on their own, making government intervention unnecessary. NetChoice's own Vice President testified in a declaration that NetChoice's members have security measures such as "age-gating" and age restrictions that help moderate the content that children see. Dkt. 17 at 9-10. As did Meta's head of security, who said that Facebook and Instagram "promote safety" through their own age verification procedures among many other things. *Id.* at 22. He also said Meta has a "robust system" to moderate content that violates its policies and would be harmful for children. *Id.* at 27. Such statements are examples of the bold declarations regarding safety that NetChoice and its members have made in the pleadings. Meanwhile, Defendant provided factual evidence to the contrary in the form of affidavits of Mr. Tony Allen and Dr. Karen Farst, and also live testimony by Mr. Allen. Allen in particular criticized the effectiveness of the age verification and content moderation methods of many of NetChoice's members. Dkt. 34 at 24. Dr. Farst provided evidence that many children, including those in Arkansas, are being harmed by sexual predators through the use of NetChoice's members' platforms, contrary to the testimony of NetChoice's declarations. Declaration of Karen Farst, at 3-4. This factual conflict necessitates discovery to determine what is true. The validity of the claims made by NetChoice's members, particularly in the face of mounting public evidence to the contrary, must be probed through the discovery process.[3] The Court should not endorse NetChoice's "all for self, none for thee" approach to discovery.

Also, in its order granting NetChoice's motion for preliminary injunction, this Court noted that it would not reach a definitive conclusion regarding whether intermediate or strict scrutiny

---

[3] See Ex. 1 "Meta continues to publicly misrepresent the level and frequency of harm that users, especially children, experience on the platform."

4

applies "at this early stage in the proceedings." Dkt, 44, at 38. We are still at the same "early stage." The statement "early stage" alone implies more evidence is needed to reach the "later stage" where such a determination can be made. Discovery will allow not just the Defendant but both sides to gather evidence as to whether the law is truly content neutral or content specific. Discovery is required to proceed.

Furthermore, NetChoice does not rely on the supposed "hardship or inequity to *the moving party* [i.e., NetChoice itself] if the matter is not stayed." *Ornelas*, 2022 WL 3129069, at *1. Instead, it raises an alleged burden on third parties—its member organizations. *See* Dkt. 49, at 5. But while discovery on third parties "will undoubtedly create some burden for the parties," it "will only minimally burden" NetChoice. *Tama Plastic Indus. v. Prichett Twine & Net Wrap, LLC*, No. 8:12-cv-324, 2013 WL 275013, at *4 (D. Neb. Jan. 24, 2013). That minimal "burden is outweighed by the potential harm to [the Defendant] if discoverable information held by third parties is lost." *Id.* Thus, "the parties should be allowed to conduct third-party discovery as it relates to the [claims]." *Id.*

NetChoice also mentions the burden of "expensive discovery." However, NetChoice chose to initiate litigation, so it should be no surprise discovery is a necessary part of that process. It now feigns surprise at the prospect of discovery, claiming it will be too burdensome. This position too is weak as district courts within the Eighth Circuit have found that complaints about time and money ring hollow because these supposed burdens are "inherent in litigation." *E.g.*, *Wild v. Rockwell Labs, Ltd.*, No. 4:19-CV-00919-W-RK, 2020 WL 1892307, at *2 (W.D. Mo. Apr. 16, 2020). NetChoice has not shown how the discovery in this case will be "unusually burdensome or prejudicial beyond the usual case of this nature." *All Sys. Broadband*, 2013 WL 4487505, at *2.

For all of these reasons, NetChoice will not be overly burdened by discovery.

### 3. A stay harms Defendant's ability to litigate by preventing him from conducting necessary factual inquiry.

The Defendant is burdened by a stay in discovery, for many of the same reasons articulated above. As much as NetChoice repeats that this is a purely legal issue, NetChoice itself has made it at least a partially factual issue, through its submission of affidavits. Defendant would be prejudiced by not being able to properly prod the factual assertions already made by NetChoice and those that may come in its hypothetical, unfiled dispositive motion. As mentioned above, Defendant at least needs the opportunity to question NetChoice's assertions about the safety of its members' platforms and their ability to self-regulate, as asserted in their affidavits. NetChoice also attempts to read tea leaves about the State's alleged lack of "urgency to enforce the law" by saying that Defendant has not propounded discovery requests before the case management hearing and asserting that Defendant chose not to appeal this Court's preliminary injunction. This is inaccurate, and there's no evidence to support the assertion. Defendant wants to engage in the discovery process to develop a factual record that allows Defendant to properly defend Act 689. Defendant conveyed this at the Rule 26(f) conference. To do so, discovery must not be stayed.

Moreover, the parties agreed to a relatively short discovery window in the interest of speedily litigating this case. *See* Dkt. 47, at 4. Thus, if NetChoice's motion is successful, a stay would greatly harm the Defendant's ability to fully litigate this case.

### 4. It is unclear what judicial resources would be spent in the discovery process.

NetChoice says that the preservation of judicial resources necessitates a stay. However, it is unclear what judicial resources would be expended during the discovery process, since such a process is done primarily between the two parties without involvement from the Court. Arguably, NetChoice has actually spent more judicial resources by filing this motion than would be spent

6

during the discovery process, given that there is currently no indication the Court will need to have any involvement in discovery. For that reason, this factor does not weigh in favor of NetChoice.

### 5. Discovery is also in the public interest.

Courts also look at other factors, such as the public interest. Here, a stay in discovery is against the public interest. It was well documented in Defendant's briefing that the social media companies that are members of NetChoice have an outsized influence in American society. Such an influence brings with it a certain level of responsibility for the harms that these companies facilitate through their platforms.[4]

NetChoice has made representations about what its members are doing to protect children from the harmful effects of their platforms and relied on those representations as being a reason that Act 689 is unconstitutional. A discovery process where Defendant is allowed to search the truth of those representations is within the public interest (and, not to mention, the scope of litigation that NetChoice itself created). Also, on a larger scale, Act 689 was duly enacted by the Arkansas General Assembly. It is certainly in the public's interest that the State be allowed the opportunity to properly defend the law that its duly-elected representatives enacted. Doing so requires a full and robust discovery process. For those reasons, it is in the public interest to deny a stay.

### 6. The initial disclosure deadline should remain in place.

NetChoice asks for the initial disclosure deadline to be vacated along with discovery stayed. That initial disclosure deadline was set by this Court in its initial scheduling order as November 21. This deadline should remain in place as well as discovery should not be stayed.

---

[4] See Ex. 2. "The Truth About Teens, Social Media and the Mental Health Crisis."

## Conclusion

For these reasons, Defendant asks the Court to deny NetChoice's motion for a stay in discovery, and for all other just and proper relief to which he is entitled.

Respectfully submitted,

TIM GRIFFIN
Attorney General


By:   John Payne
      Ark. Bar No. 97097
      Deputy Attorney General

      Jordan Broyles
      Ark. Bar No. 2015156
      Senior Assistant Attorney General

      Noah P. Watson
      Ark. Bar No. 2020251
      Senior Assistant Attorney General

      Justin Brascher
      Ark. Bar No. 2023029
      Assistant Attorney General


      Arkansas Attorney General's Office
      323 Center Street, Suite 200
      Little Rock, Arkansas 72201
      (501) 503-4335
      (501) 682-2591 fax
      john.payne@arkansasag.gov
      jordan.broyles@arkansasag.gov
      noah.watson@arkansasag.gov
      justin.brascher@arkansas.gov

      *Attorneys for Tim Griffin*