IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NETCHOICE, LLC                                                                                                Plaintiff

Case No. 5:23-cv-05105-TLB

TIM GRIFFIN, in his official capacity
as Attorney General of Arkansas                                                                      Defendant

### THE ATTORNEY GENERAL'S MOTION TO DENY OR DEFER CONSIDERATION OF NETCHOICE'S MOTION FOR SUMMARY JUDGMENT UNTIL DISCOVERY IS COMPLETED

The Court has not held its case management hearing. And no discovery has been conducted in this case. Yet, on November 28, 2023, NetChoice filed a motion for summary judgment using one-sided declarations from declarants who the Defendant has had no opportunity to depose. Nor has the Defendant had the opportunity to review documents that the declarants relied on. Nevertheless, NetChoice asks the Court to accept, without question, what it says is the truth.

NetChoice's motion is premature. Discovery is necessary. It is necessary to probe the truth of the assertions NetChoice makes. Therefore, under Federal Rule of Civil Procedure 56(d), the Court should deny the motion or defer considering it until after discovery has been conducted.

**STANDARD**

Under Rule 56(d), "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of or deny the motion, grant more time for discovery, or provide other relief. Fed. R. Civ. P. 56(d). This rule "should be applied with a spirit of liberality" to "safeguard against an improvident or premature grant of summary judgment." *U.S. ex rel. Bernard v. Casino Magic Corp.*, 293

F.3d 419, 426 (8th Cir.2002). "As a general rule, summary judgment is proper only after the non-movant has had adequate time for discovery." *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.,* 687 F.3d 1045, 1049–50 (8th Cir.2012). "Nonmovants may request a continuance under Rule 56(d) until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition. This option exists to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment." *Id*. at 1050. Under Rule 56(d), the nonmovant must present an affidavit showing what further discovery might uncover or what information that discovery may reveal. *Id*.

## ANALYSIS

No discovery has been conducted in this case. NetChoice wants to keep it that way. Dkt. 48. Although NetChoice does not want the Defendant to have any chance to use the discovery process, it relies on many facts to make its arguments—facts that the Defendant has not had any opportunity to scrutinize.

NetChoice's Statement of Undisputed Facts contains multiple factual assertions that it relies on and that the Defendant deserves to evaluate through the discovery process. These assertions fall into three categories: (1) assertions about the substantial compliance costs associated with Act 689; (2) the services Internet providers and companies unassociated with NetChoice provide to users that allegedly protect children from harmful material on NetChoice members' platforms; and (3) the services provided by NetChoice members to users that allegedly protect children from harmful material on their platforms. Defendant requires discovery to determine the validity of these assertions.

First, in ¶ 41 of their Statement of Undisputed Facts, NetChoice asserts that if Act 689 goes into effect "one or more NetChoice members would incur substantial compliance costs."

NetChoice then cites to the declaration of three different individuals who either work for NetChoice or one of its members. Defendant's own expert witness, Tony Allen, has testified to the contrary regarding the cost of digital age verification. Dkt. 34 at ¶ 92. Allen testified that the cost of digital age verification has decreased dramatically, so that there is no longer an undue burden on web publishers from the implementation of these technologies. *Id*. Allen testified that a cost per check to a publisher would likely be "twelve cents or lower for high volume platforms" and that cost could be "defrayed across 100 websites." *Id.* Those costs will only continue to decrease over time from growing competition and familiarity with the practice. *Id.* Defendant needs the opportunity to determine what NetChoice's members believe those compliance costs will be, and why they think they will be substantial. This can be determined through both document requests to NetChoice as well as depositions of those individuals who provided affidavits.

Second, in ¶¶ 42–45, NetChoice asserts that cell carriers, broadband providers, wireless routers, Internet-equipped devices, and Internet browsers all "offer tools that allow parents to control what applications their children can use" or "block specific websites or applications" from their children's devices. Similarly, in ¶¶ 46–53, NetChoice asserts that Meta, Snapchat, and NextDoor provide tools that allegedly allow parents to control what their child sees on their platforms. They also assert that Meta and Snapchat "take steps" to remove harmful material from their platform. NetChoice has argued since the outset of this case that such measures are sufficient to prevent children from predators online and government intervention is not needed. Dr. Karen Farst's testimony for Defendant said something very different. Affidavit of Karen Farst, MD. Dr. Farst testified that in her work with children who have been victims of sexual abuse, activity on social media is a "common risk factor." *Id.* at ¶ 10. Dr. Farst testified that social media "is a significant contributor to sexual exploitation, abuse, and trafficking." *Id* at ¶ 14. Defendant

3

needs to probe NetChoice's contrary assertions through the discovery process. Specifically, Defendant needs to learn whether NetChoice's members platforms contribute to sexual exploitation, as Dr. Farst states, and why that is their opinion. Defendant needs to learn what steps NetChoice's members are taking to prevent sexual exploitation, how they measure the effectiveness of those steps, and why they feel that those steps are necessary. NetChoice's members claim that their methods of protecting children are sufficient, so Defendant needs an opportunity to properly investigate those methods in order to properly respond to the assertions they have made.

Despite NetChoice's asserted "facts," its own members realize the necessity of laws like Act 689. Meta—mere weeks before NetChoice's motion—asked Congress to require app stores to verify the ages of individuals that download their apps.[1] In other words, NetChoice's members realize the Act 689 is a good idea, but they just don't want to do the actual work of protecting children. Similarly, recent reporting shows that Instagram, a platform run by Meta, shows "risqué footage of kids and overtly sexual videos."[2] Such reporting specifically contradicts the factual assertions made by NetChoice and the affidavits they have provided, and the Defendant therefore needs to use the discovery process to investigate how NetChoice and its members are making those assertions.

One of the arguments that NetChoice raises is that Act 689 is not narrowly tailored to fit the compelling governmental interest of protecting children from sexual predators, based on

---

[1] Cristiano Lima and Naomi Nix, *Meta says vetting teens' ages should fall on app stores, parents,* Washington Post, (November 15, 2023), https://www.washingtonpost.com/technology/2023/11/15/meta-law-parental-controls-apple-google-apps/. Attached as Exhibit 2.

[2] Jeff Horwitz and Katherine Blunt, *Instagram's Algorithm Delvers Toxic Video Mix To Adults Who Follow Children*, Wall Street Journal (November 27, 2023). https://www.wsj.com/tech/meta-instagram-video-algorithm-children-adult-sexual-content-72874155. Attached as Exhibit 3.

which platforms are included and which are excluded. Discovery will allow Defendant to demonstrate why certain platforms are subject to Act 689 while others aren't. Information such as how often the parental controls are used on a platform, internal numbers regarding the number of sexual incidents that occur on the platforms, and the amount of sexually explicit posts that need to be taken down on the platforms are all pieces of relevant information to demonstrating the narrow tailoring of Act 689. That is why discovery is needed.

## CONCLUSION

NetChoice has filed a Motion for Summary Judgment prematurely. Discovery has not even begun in this case. Defendant should be allowed to conduct discovery in order to probe many of the specific factual assertions that NetChoice has made, both in its Motion for Summary Judgment and throughout this litigation. The affidavit required by Federal Rule of Civil Procedure 56(d) is attached to this motion as Exhibit 1. For these reasons, Defendant asks this Court to deny NetChoice's motion or defer its decision on the motion until discovery is complete, staying Defendant's response deadline.

Respectfully submitted,

TIM GRIFFIN
Attorney General

By:  John Payne
Ark. Bar No. 97097
Deputy Attorney General

Jordan Broyles
Ark. Bar No. 2015156
Senior Assistant Attorney General

Noah P. Watson
Ark. Bar No. 2020251
Senior Assistant Attorney General

                Justin Brascher
                Ark. Bar No. 2023029
                Assistant Attorney General

                Arkansas Attorney General's Office
                323 Center Street, Suite 200
                Little Rock, Arkansas 72201
                (501) 682-1019
                (501) 682-2591 fax
                john.payne@arkansasag.gov
                jordan.broyles@arkansasag.gov
                noah.watson@arkansasag.gov
                justin.brascher@arkansasag.gov

                *Attorneys for the Defendant*