IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**NETCHOICE, LLC**                                                                      **Plaintiff**

Case No. 5:23-cv-05105-TLB

**TIM GRIFFIN**, in his official capacity
as Attorney General of Arkansas                                           **Defendant**

## AFFIDAVIT OF JUSTIN BRASCHER

I, Justin Brascher, am at least eighteen years old, am competent to testify, and have personal knowledge regarding the statements contained in this Affidavit, and do hereby state and verify the following:

1. I am counsel of record in the above-captioned case, representing the Defendant in his official capacity, Attorney General Tim Griffin.

2. On November 28, 2023, Plaintiffs NetChoice filed a Motion for Summary Judgment in this case.

3. This case is set for a Case Management Hearing on November 30, and discovery has not even begun.

4. Along with its Motion for Summary Judgment, NetChoice filed a Statement of Undisputed Facts.

5. NetChoice's Statement of Undisputed Facts contains multiple factual assertions that it relies on and that the Defendant deserves to evaluate through the discovery process. These assertions fall into three categories: (1) assertions about the substantial compliance costs associated with Act 689; (2) the services Internet providers and companies unassociated with NetChoice provide to users that allegedly protect children from harmful material on NetChoice members'

EXHIBIT 1

platforms; and (3) the services provided by NetChoice members to users that allegedly protect children from harmful material on their platforms. Defendant requires discovery to determine the validity of these assertions.

6. First, in ¶ 41 of their Statement of Undisputed Facts, NetChoice asserts that if Act 689 goes into effect "one or more NetChoice members would incur substantial compliance costs." NetChoice then cites to the declaration of three different individuals who either work for NetChoice or one of its members.

7. Defendant's own expert witness, Tony Allen, has testified to the contrary regarding the cost of digital age verification. Dkt. 34 at ¶ 92. Allen testified that the cost of digital age verification has decreased dramatically, so that there is no longer an undue burden on web publishers from the implementation of these technologies. Id. Allen testified that a cost per check to a publisher would likely be "twelve cents or lower for high volume platforms" and that cost could be "de-frayed across 100 websites." Id. Those costs will only continue to decrease over time from growing competition and familiarity with the practice. Id.

8. Defendant needs the opportunity to determine what NetChoice's members believe those compliance costs will be, and why they think they will be substantial. This can be determined through both document requests to NetChoice as well as depositions of those individuals who provided affidavits.

9. Second, in ¶¶ 42–45, NetChoice asserts that cell carriers, broadband providers, wireless routers, Internet-equipped devices, and Internet browsers all "offer tools that allow parents to control what applications their children can use" or "block specific websites or applications" from their children's devices.

10. Similarly, in ¶46-53 NetChoice asserts that Meta, Snapchat and NextDoor all provide supervision tools or family centers that allow parents to allegedly control what their child sees on their platforms. They also assert that Meta and Snapchat "take steps" to remove harmful material from their platform.

11. NetChoice has argued since the outset of this case that such measures are sufficient to prevent children from predators online, and government intervention is not needed.

12. Dr. Karen Farst's testimony for Defendant said something very different. Affidavit of Karen Farst, MD. Dr. Farst testified that in her work with children who have been victims of sexual abuse, activity on social media is a "common risk factor." Id. at ¶ 10. Dr. Farst testified that social media "is a significant contributor to sexual exploitation, abuse, and trafficking." Id at ¶ 14.

13. Defendant needs to probe NetChoice's contrary assertions through the discovery process. Specifically, Defendant needs to learn whether NetChoice's members platforms contribute to sexual exploitation, as Dr. Farst states, and why that is their opinion. Defendant needs to learn what steps NetChoice's members are taking to prevent sexual exploitation, how they measure the effectiveness of those steps, and why they feel that those steps are necessary. NetChoice's members claim that their methods of protecting children are sufficient, so Defendant needs an opportunity to properly investigate those methods in order to properly respond to the assertions they have made.

14. Despite NetChoice's asserted "facts," its own members realize the necessity of laws like Act 689. Meta—mere weeks before NetChoice's motion—asked Congress to require app stores to verify the ages of individuals that download their apps. *See* Exhibit 2.

15. In other words, NetChoice's members realize the Act 689 is a good idea, but they just don't want to do the actual work of protecting children.

16.     Similarly, recent reporting shows that Instagram, a platform run by Meta, shows "risqué footage of kids and overtly sexual videos." *See* Exhibit 3.

17.     Such reporting specifically contradicts the factual assertions made by NetChoice and the affidavits they have provided, and the Defendant therefore needs to use the discovery process to investigate how NetChoice and its members are making those assertions.

18.     One of the arguments that NetChoice raises is that Act 689 is not narrowly tailored to fit the compelling governmental interest of protecting children from sexual predators, based on which platforms are included and which are excluded. Discovery will allow Defendant to demonstrate why certain platforms are subject to Act 689 while others aren't.

19      Information such as how often the parental controls are used on a platform, internal numbers regarding the number of sexual incidents that occur on the platforms, and the amount of sexually explicit posts that need to be taken down on the platforms are all pieces of relevant information to demonstrating the narrow tailoring of Act 689. That is why discovery is needed.

FURTHER, THE AFFIANT SAYETH NAUGHT.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

JUSTIN BRASCHER

Signed and sworn to before me on this 30th day of November, 2023.

                                                                         _____
                                                                          Notary Public

My Commission Expires:_____