IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**NETCHOICE, LLC**                                                                                       **PLAINTIFF**

**V.**                              **CASE NO. 5:23-CV-5105**

**TIM GRIFFIN, in his Official Capacity**
**as Attorney General of Arkansas**                                                        **DEFENDANT**

## OPINION AND ORDER

This case involves a constitutional challenge to Arkansas Act 689 of 2023, the "Social Media Safety Act" ("Act 689"), a recent Arkansas statute that requires certain social media companies to verify the age of all account holders who reside in Arkansas. Act 689 aims to protect minors from harms associated with the use of social media platforms. But Plaintiff NetChoice, LLC ("NetChoice") contends that the Act is unconstitutionally vague and violates Arkansans' First Amendment rights. On August 31, 2023, the Court preliminarily enjoined Act 689 pending final disposition of these issues on the merits ("PI Order") (Doc.44).

Now before the Court are NetChoice's Motion to Stay Discovery (Doc. 48) and Defendant Arkansas Attorney General Tim Griffin's (the "State") Motion To Deny or Defer Consideration of NetChoice's Motion for Summary Judgment Until Discovery is Completed (Doc. 58). NetChoice also filed a Motion for Summary Judgment (Doc. 54), which both of the instant Motions reference.[1] The Court considers but does not rule on NetChoice's Motion for Summary Judgment here.

This matter's Case Management Hearing was held on November 30, 2023. There,

---

[1] *See also* Doc. 55 (Brief in Support); Doc. 56 (Statement of Facts) ("NetChoice's SOF").

1

the Court heard argument on the two instant Motions, which focused on whether discovery was necessary for the Court to decide NetChoice's Motion for Summary Judgment. *See generally* Doc. 61 (official transcript). NetChoice argued that because it challenges Act 689 on its face, additional discovery is not needed. In rejoinder, the State disputed Paragraphs 41 to 53 of NetChoice's SOF (Doc. 56) and maintained that discovery is necessary to determine their veracity. At the Hearing's conclusion, the Court ordered the State to file supplemental briefing "to address with more specificity: (1) which facts they dispute within paragraphs 41 to 53 of [ ] Plaintiff's Statement of Undisputed Facts, and (2) why those facts are material to Plaintiff's facial challenges to Act 689." (Doc. 60). The State filed a Supplemental Brief on December 8 (Doc. 62), to which NetChoice responded on December 18 (Doc. 63). Both Motions are now fully briefed and ripe for review.[2] For logical purposes, the Court first discusses the State's Motion below.

Upon consideration, the State's Motion is **GRANTED IN PART AND DENIED IN PART** and NetChoice's Motion is **GRANTED IN PART AND DENIED IN PART**.[3] Limited discovery may proceed before the Court considers summary judgment.

---

[2] *See* Doc. 48 (NetChoice's Instant Motion); Doc. 49 (NetChoice's Brief in Support); Doc. 50 (the State's Response); Doc. 53 (NetChoice's Reply); *see also* Doc. 58 (the State's Instant Motion); Doc. 60 (Text Only Order Directing Supplemental Briefing); Doc. 62 (the State's Supplemental Brief); Doc. 63 (NetChoice's Response to the State's Supplemental Brief).

[3] In its Motion, NetChoice also moved to vacate the November 21, 2023 deadline for initial disclosures, which the Court now **FINDS AS MOOT**. This Order sets a new initial disclosure deadline in its conclusion, *see infra* p. 10.

2

### I. THE STATE'S MOTION TO DENY OR DEFER CONSIDERATION OF NETCHOICE'S MOTION FOR SUMMARY JUDGMENT UNTIL DISCOVERY IS COMPLETED (DOC. 58)

"As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (quoting *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012) and *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999)). Accordingly, Federal Rule of Civil Procedure 56(d) provides a "safeguard against an improvident or premature grant of summary judgment," *United States ex rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The Eighth Circuit instructs that Rule 56(d) "should be applied with a spirit of liberality." *Casino Magic Corp.*, 293 F.3d at 426. However, "[t]he party seeking additional discovery must show: '(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion.'" *Marlow v. City of Clarendon*, 78 F.4th 410, 416 (8th Cir. 2023) (quoting *Toben*, 751 F.3d at 895).

In its Motion and Supplemental Brief, the State explains that it needs discovery to evaluate the validity of three categories of assertions made in NetChoice's Statement of

Undisputed Facts (Doc. 56), arguing that it has cast doubt on each through its submitted affidavits and hearing testimony. The first category is "assertions about the substantial compliance costs associated with Act 689." (Doc. 58, p. 2 (referencing Doc. 56, ¶ 41)). However, at the Case Management Hearing, the parties agreed that Paragraph 41 was included to establish standing. *See* Doc. 61, pp. 920:25–22:3, 931:1–32:5. The Court here refers the State to a dispositive finding on this issue from its PI Order:

> While the State quibbles with precisely how burdensome Act 689 will prove in practice, it does not deny that compliance will impose some costs. The injuries here are sufficient to establish that NetChoice members would have standing to sue in their own right, and thereby satisfy the first prong of the associational-standing test. *See Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, 2023 WL 4834598, at *2 (8th Cir. July 28, 2023) (finding a "risk of direct financial harm establishes injury in fact for standing purposes" (brackets and quotations omitted)).

(Doc. 44, p. 24). No further discovery on Paragraph 41 is necessary to decide standing.

Second, the State seeks discovery to challenge NetChoice's assertions concerning "the services Internet providers and companies unassociated with NetChoice provide to users that allegedly protect children from harmful material on NetChoice members' platforms." (Doc. 58, p. 2 (referencing Doc. 56, ¶¶ 42–45)). But NetChoice has stated these facts in a very general manner, *see, e.g.*, Doc. 56, ¶ 45 ("Internet browsers such as Google Chrome, Microsoft Edge, and Mozilla Firefox offer parents tools to control which websites their children can access."), and third-party discovery on these paragraphs would be expansive. Moreover, the State has not specified why such discovery is necessary; it did not address this category of assertions in its Supplemental Brief. The Court thus finds that further discovery is not needed on Paragraphs 42 to 45.

Third, the State seeks discovery into "the services provided by NetChoice members to users that allegedly protect children from harmful material on their platforms."

(Doc. 58, p. 2 (referencing Doc. 56, ¶¶ 46–53)). "Specifically, Defendant needs to learn whether NetChoice's members['] platforms contribute to sexual exploitation" and "what steps NetChoice's members are taking to prevent sexual exploitation, how they measure the effectiveness of those steps, and why they feel that those steps are necessary." *Id.* at p. 4. The State explains that such discovery is necessary to respond to NetChoice's narrow tailoring arguments at summary judgment:

> One of the arguments that NetChoice raises is that Act 689 is not narrowly tailored to fit the compelling governmental interest of protecting children from sexual predators, based on which platforms are included and which are excluded. Discovery will allow Defendant to demonstrate why certain platforms are subject to Act 689 while others aren't. Information such as how often the parental controls are used on a platform, internal numbers regarding the number of sexual incidents that occur on the platforms, and the amount of sexually explicit posts that need to be taken down on the platforms are all pieces of relevant information to demonstrating the narrow tailoring of Act 689. That is why discovery is needed.

*Id.* at pp. 4–5.

The Court finds that, out of an abundance of caution, limited discovery is appropriate on Paragraphs 46 to 53. The State's Supplemental Brief satisfies *Marlow*'s affidavit requirement in this instance. *See* Doc. 60. And the State has shown that the facts it seeks exist through its Supplemental Brief and attachments, pursuant to the second *Marlow* factor, as applied here. *See, e.g.*, Doc. 62-5, p. 6 (*Hearing on Social Media and the Teen Mental Health Crisis Before the S. Comm. on the Judiciary Subcomm. on Privacy, Technology, and the Law*, 118th Cong. (written testimony of Arturo Bejar) (describing Meta's "systems that measured important harms as well as methods to reduce those harms, for teens and others")).

With respect to the third *Marlow* factor, the Court makes the following observations.

"In order to survive intermediate scrutiny, a law must be 'narrowly tailored to serve a significant governmental interest.' In other words, the law must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Packingham v. North Carolina*, 582 U.S. 98, 105–06 (2017) (quoting *McCullen v. Coakley*, 573 U.S. 464, 486 (2014)). In its PI Order, this Court made the preliminary finding that Act 689 "is not narrowly tailored to address the harms that the State contends are encountered by minors on social media." (Doc. 44, p. 43). The State now seeks the opportunity to discover evidence to show that Act 689 "constitute[s] the sort of 'narrow tailoring' that will save an otherwise patently invalid unconstitutional provision" by challenging Paragraphs 46 to 53. *Reno v. Am. C.L. Union*, 521 U.S. 844, 882 (1997).

The State believes that discovery on these paragraphs is essential to show that Act 689 is not overly broad and is narrowly tailored because it "targets . . . the platforms that cause the most harm." (Doc. 62, p. 3). For example, it argues that such facts "will answer why Facebook was properly included in the Act, while Snapchat was excluded." *Id.* at pp. 2–3. Specifically, the State contends that facts to show that Facebook's parent company, "Meta[,] does not succeed in removing harmful content from its platform" because "[i]t's 'community standards' and 'terms of service' are not enforced in the way that Meta's declaration says they are" are essential to show that "Act 689 is narrowly tailored to meet the government's interest in protecting children," insofar as it targets Meta. *Id.* at 4–5 (citations omitted). The State's Supplemental Brief elaborates on other similar theories. In all candor, the Court is skeptical of the State's argument for the reasons outlined in the Case Management Hearing and its PI Order. However, the "spirit of liberality" with which the Court is instructed to apply Rule 56(d), *Casino Magic Corp.*,

6

293 F.3d at 426, counsels allowing discovery on these paragraphs as the State has made its requisite showing under *Marlow*.

Therefore, the State's Motion is **GRANTED IN PART AND DENIED IN PART**. The Court finds that the State has failed to show that discovery is essential on Paragraphs 41 to 45 of NetChoice's SOF; however, it has met its burden with respect to Paragraphs 46 to 53. NetChoice argues and the Court agrees that "First Amendment Standards 'must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." Doc. 63, p. 15 (quoting *Fed. Election Comm'n v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 469 (2007) (controlling plurality op. of Roberts, C.J.). But here, under Rule 56(d), minimal discovery is a better fit than none.

## II. NETCHOICE'S MOTION TO STAY DISCOVERY (Doc. 48)

Next, the Court turns to NetChoice's Motion. The Court may stay discovery "for good cause . . . to protect a party . . . from . . . undue burden or expense." Fed. R. Civ. P. 26(c)(1). The power to stay proceedings is committed to this Court's discretion, being "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Where, as here, the Court must determine whether to grant a motion to stay discovery pending the outcome of a dispositive motion, it considers the following factors to determine whether the moving party has met its burden:

    (1) whether the movant has shown a likelihood of success on the merits of the dispositive motion;

    (2) hardship or inequity to the moving party if the matter is not stayed;

7

> (3) prejudice to the non-moving party if the matter is stayed; and
>
> (4) the conservation of judicial resources.

*Jason M. Hatfield, P.A. v. Ornelas*, 2022 WL 3129069, at *1 (W.D. Ark. Aug 4, 2022) (citations and brackets omitted). The Court may also consider the breadth of the pending discovery and the public interest. *See id.*; *Nunes v. Lizza*, 2020 WL 6938825, at *2 (N.D. Iowa July 23, 2020) (citing *United States ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC*, 2014 WL 12618074, at *1 (W.D. Mo. Jan. 7, 2014)).

Here, NetChoice argues that because it "believes this case presents pure questions of constitutional law that are ripe for resolution based on widely known facts about which there can be no genuine dispute," (Doc. 48, ¶ 2), "discovery is neither necessary nor appropriate," *id.* (citations omitted). For the reasons stated in its Preliminary Injunction Opinion (Doc. 44), the Court agrees that the first factor—whether the movant has shown a likelihood of success on the merits of the dispositive motion—weighs in NetChoice's favor.

With respect to the second and third factors, NetChoice points the Court to the chilling effect that expensive discovery will have on its members' First Amendment Rights. The State counters that "NetChoice chose to initiate litigation, so it should be no surprise discovery is a necessary part of that process," and that discovery will not be unusually burdensome or prejudicial. (Doc. 50, p. 5). For the reasons stated in the preceding section, the Court agrees that expansive discovery is inappropriate here. However, the Court is unpersuaded that the limited discovery described *supra* imposes an undue hardship on NetChoice's members. And it would risk prejudice against the State to completely stay discovery in light of the Court's findings above. *Cf. Lovelace-El v. Delo*, 1994 WL 762407, at *1 (E.D. Mo. July 22, 1994) ("The Court finds that it is impracticable

8

to stay all discovery in this matter because it impairs plaintiffs' ability to respond to the motion for summary judgment . . . ."). The Court's view on these factors is that it has winnowed discovery considerably to a minimal process that appropriately mitigates both the risks of hardship to NetChoice's members and prejudice to the State.

Turning to the fourth factor, the Court is mindful that the conservation of judicial resources weighs against extensive discovery pursuant to NetChoice's facial challenge to Act 689. But the Court also has an administrative interest in ensuring the accuracy of its preliminary rulings on NetChoice's challenges to Act 689. This case appears likely to resolve at summary judgment. It is thus an efficient use of judicial resources to allow limited discovery to equip the Court to rule effectively on all of the questions presented.

Finally, the Court finds that the public interest further weighs against a stay. Principals of democracy and judicial restraint counsel that the State should be afforded a full opportunity to defend the judgment of its legislature. And this Court has hardly "rewarded the state for passing a blatantly unconstitutional law," as NetChoice argues, (Doc. 53, p. 9), by enjoining Act 689 at NetChoice's first request to do so. To the extent that the Act is ultimately found to be unconstitutional on the merits, its harm has been suspended by the Court's preliminary injunction, which will remain in effect for the course of this litigation.

Taken together, these factors weigh against staying discovery entirely. The Court agrees with NetChoice that extensive discovery is excessive and unnecessary. However, it will allow limited discovery on the narrow tailoring inquiry captured in Paragraphs 46 to 53 of NetChoice's SOF. NetChoice's Motion is **GRANTED IN PART AND DENIED IN PART** on these terms.

## III. CONCLUSION

For the foregoing reasons, the State's Motion To Deny or Defer Consideration of NetChoice's Motion for Summary Judgment until Discovery is Completed (Doc. 58) is **GRANTED IN PART AND DENIED IN PART** and NetChoice's Motion to Stay Discovery (Doc. 48) is **GRANTED IN PART AND DENIED IN PART**. The Court directs the parties to proceed with limited discovery on the State's factual challenges to Paragraphs 46 to 53 of NetChoice's SOF (Doc. 56), after which the Court will consider summary judgment.

The following briefing schedule **IS FURTHER ORDERED**:

- the **Initial Disclosure Deadline is set for April 15, 2024**;
- the **Discovery Deadline is set for June 7, 2024**; and
- the **Dispositive Motions Deadline is set for June 21, 2024**.

Finally, the Court affirms that NetChoice may file an amended motion for summary judgment on or before the dispositive motion deadline if it chooses to do so.

**IT IS SO ORDERED** on this 24th day of March, 2024.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE