UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**NETCHOICE, LLC**                                                                                    **PLAINTIFF**

**v.**                                           **CASE NO. 5:23-cv-05105-TLB**

**TIM GRIFFIN, in his official capacity**
**as Attorney General of Arkansas**                                            **DEFENDANT**

STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff NetChoice, LLC ("NetChoice") is an Internet trade association whose members include Meta Platforms, Inc. ("Meta"); Nextdoor Holdings, Inc.; Pinterest, Inc.; Snap Inc.; TikTok Inc.; and X Corp.  Ex. A, Decl. of Carl Szabo ¶¶3-4 ("Szabo Decl.").

2.      Meta operates online services called Facebook and Instagram.  *Id.* ¶4.

3.      On Facebook, individuals may sign up for an account; establish mutual connections with other Facebook users; create and share content such as stories, photos, videos, captions, status updates, and links; view content shared by other Facebook users; and exchange direct messages with other Facebook users.  Ex. B, Decl. of Antigone Davis ¶¶7, 12 ("Davis Decl.").

4.      Adults and minors use Facebook to engage in a broad array of expressive activity, protected by the First Amendment, on a wide range of topics.  *Id.* ¶¶11-19; Joint Stips. ¶7 (Aug. 11, 2023).

5.      On Instagram, individuals may sign up for an account; establish mutual connections with other Instagram users; create and share content such as stories, photos, videos, captions, messages, and links; view content shared by other Instagram users; and exchange direct messages with other Instagram users.  Davis Decl. ¶8.

6.      Adults and minors use Instagram to engage in a broad array of expressive activity, protected by the First Amendment, on a wide range of topics.  *Id.* ¶¶11-19; Joint Stips. ¶7.

7.      Meta has generated more than $100 million in annual gross revenue.  Davis Decl. ¶5.

8.      Snap Inc. operates an online service called Snapchat.  Szabo Decl. ¶4.

9.      On Snapchat, individuals may sign up for an account; establish mutual connections with other Snapchat users; create and share content such as text, images, and videos; and view content shared by other Snapchat users.  Dkt.17-3, Decl. of David Boyle ¶3 ("Boyle Decl.").

10.      Snapchat opens to the user's camera and allows the user to send other Snapchat users direct messages that by default delete after being opened.  *Id.* ¶4.

11.      Snapchat enables users to compile photos and videos into "Stories," which are generally available for 24 hours and which, by default, are viewable only by other Snapchat users with whom the sender has already established a mutual connection.  *Id.*

12.      Snapchat offers a "Discover" feature, which gives users access to vetted content from trusted partners (e.g., NBC News).  *Id.*

13.      Snapchat offers a "Spotlight" feature, which allows users to make videos that anyone can view.  *Id.*

14.      Adults and minors use Snapchat to engage in a broad array of expressive activity, protected by the First Amendment, on a wide range of topics.  *Id.* ¶¶3-4; Joint Stips. ¶7.

15.      Snap Inc. has generated more than $100 million in annual gross revenue.  Ex. 19.[1]

16.      Nextdoor Holdings, Inc. operates an online service called Nextdoor.  Szabo Decl. ¶4.

17.       On Nextdoor, individuals may sign up for an account; establish mutual connections with other Nextdoor users; create and share content such as information about local events; view

---

[1] All numbered exhibits are attached to Exhibit D, Declaration of Katherine C. Campbell.

content shared by other Nextdoor users; and exchange direct messages with other Nextdoor users. Ex. C, Decl. of Justyn Harriman ¶¶3-5 ("Harriman Decl.").

18.     Individuals who sign up for Nextdoor are placed in a neighborhood based on their address and automatically receive updates from nearby neighbors, businesses, and public services. *Id.* ¶4.

19.     Approximately 1% of Nextdoor's users are between the ages of 13 and 17. *Id.* ¶14.

20.     Some teens use Nextdoor to find employment in the neighborhood where they live. *Id.* ¶15.

21.     Adults and minors use Nextdoor to engage in a broad array of expressive activity, protected by the First Amendment, on a wide range of topics. *Id.* ¶¶3-5, 15; Joint Stips. ¶7.

22.     Nextdoor Holdings, Inc. has generated more than $100 million in annual gross revenue. *Id.* ¶3.

23.     Pinterest, Inc. operates an online service called Pinterest. Szabo Decl. ¶4.

24.     On Pinterest, individuals may sign up for an account; follow the accounts of other Pinterest users; create and share content such as text, images, and videos; view content shared by other Pinterest users; and exchange direct messages with other Pinterest users. Ex. 14.

25.     Pinterest users can create and share "Pins" displaying images, videos, or products. *Id.*

26.     Pinterest users can organize and save their Pins on Boards. *Id.*

27.     Each Pinterest user has a "home feed" that displays content—Pins, people, and businesses—curated based on the user's recent activity. *Id.*

28.     Pinterest users can search for Pins on a given topic by typing keywords into a search bar. *Id.*

29.    Pinterest users can collaborate with each other on Group Boards and can follow profiles and Boards that other Pinterest users choose to make public.  *Id.*

30.    Adults and minors use Pinterest to engage in a broad array of expressive activity, protected by the First Amendment, on a wide range of topics.  *Id.*; Joint Stips. ¶7.

31.    Pinterest, Inc. has generated more than $100 million in annual gross revenue.  Ex. 18.

32.    TikTok Inc. is the provider of an entertainment platform called TikTok in the U.S. Szabo Decl. ¶4.

33.    On TikTok, individuals may sign up for an account; follow the accounts of other TikTok users; create and share content including short videos; view content shared by other TikTok users; and exchange direct messages with other TikTok users (depending on an individual's age).  *Id.* ¶5.

34.    Adults and minors use TikTok to engage in a broad array of expressive activity, protected by the First Amendment, on a wide range of topics.  *Id.* ¶9; Joint Stips. ¶7.

35.    X Corp. operates an online service called X, which was formerly known as Twitter. Szabo Decl. ¶4.

36.    On X, individuals may sign up for an account; follow the accounts of other X users; create and share content such as text, images, and videos; view content shared by other X users; and exchange direct messages with other X users.  *Id.* ¶5.

37.    Adults and minors use X to engage in a broad array of expressive activity, protected by the First Amendment, on a wide range of topics.  *Id.* ¶9; Joint Stips. ¶7.

38.     Arkansas Act 689 of 2023 was passed by Arkansas's General Assembly on April 6, 2023, and signed into law by Arkansas Governor Sarah Huckabee Sanders on April 12, 2023. Joint Stips. ¶8.

39.     Defendant Tim Griffin is the Attorney General of Arkansas and has civil-enforcement authority under the Act. *Id.* ¶10.

40.     The Act regulates one or more NetChoice members' operation of online services by requiring the member to verify that any person creating a new account is at least 18 years old or, if younger than 18 years old, has parental consent to do so. Szabo Decl. ¶5; Joint Stips. ¶9; Dkt.34 at 20 (Defendant's brief asserting that the Act "regulates Meta, Twitter and TikTok").

41.     If the Act were to go into effect, one or more NetChoice members would incur substantial compliance costs. Szabo Decl. ¶¶12-13; Davis Decl. ¶¶50-53; Harriman Decl. ¶¶31-34.

42.     Cell carriers and broadband providers offer tools that allow parents to block specific websites and applications (*e.g.*, Facebook, X, and TikTok) from their children's devices, ensure that they are texting and chatting with trusted contacts, and restrict screen time during certain hours of the day. Ex. 2; Ex. 3; Ex. 12; Ex. 13.

43.     Wireless routers also offer parental control settings that allow parents to block specific websites and applications (*e.g.*, Facebook, X, and TikTok) from their children's devices, set individualized content filters for their children, monitor the websites their children visit and the online services they use, and limit how much time their children can spend online. Ex. 10; Ex. 11.

44.     Internet-equipped devices such as computers, tablets, and smart phones offer tools that allow parents to control what applications (*e.g.*, Facebook, X, and TikTok) their children can

use, set age-related restrictions for those applications, and filter online content.  Ex. 1; Ex. 4; Ex. 6; Ex. 8.

45.     Internet browsers such as Google Chrome, Microsoft Edge, and Mozilla Firefox offer parents tools to control which websites their children can access.  Ex. 5; Ex. 7; Ex. 9.

46.     Meta restricts the publication of violent and sexually explicit content, bullying, and harassment on Facebook and Instagram.  Davis Decl. ¶¶33-40.

47.     Meta takes steps to remove content from Facebook and Instagram that may be harmful to minors, including violent and sexually explicit content, bullying, and harassment.  *Id.* ¶¶42-44.

48.     Meta provides a Safety Center that offers expert-backed safety resources, tools, and information for users of both Facebook and Instagram.  *Id.* ¶42.

49.     Meta offers supervision tools that allow parents to monitor how much time their teen is spending on Facebook and Instagram; set scheduled breaks or time limits on their teen's daily use of each service; view which accounts their teen is following (on Instagram) or is friends with (on Facebook), which accounts follow or are friends with their teen, and which accounts their teen is currently blocking; and view their teen's account privacy settings, sensitive content settings, and messaging settings.  *Id.* ¶28.

50.     Nextdoor, Inc. takes steps to discourage the posting of harmful or hurtful content from Nextdoor, and to remove such content when it appears.  Harriman Decl. ¶¶7-12.

51.     In 2022, Nextdoor had only one report of suspected child sexual exploitation.  *Id.* ¶12(b).

Date: June 21, 2024                    Respectfully submitted,

Marshall S. Ney, Ark. Bar No. 91108
Katherine C. Campbell, Ark. Bar No. 2013241
Friday, Eldredge & Clark, LLP
3350 S. Pinnacle Hills Pkwy, Suite 301
Rogers, AR 72758
Telephone: (479) 695-6049
Facsimile: (501) 244-5389
mney@fridayfirm.com
kcampbell@fridayfirm.com

Paul D. Clement (admitted *pro hac vice*)
Erin E. Murphy (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
Joseph J. DeMott (admitted *pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
joseph.demott@clementmurphy.com

*Counsel for Plaintiff NetChoice, LLC*