IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**N<small>ET</small>C<small>HOICE</small>, LLC**                                                                                    **Plaintiff**

**v.**                                    **Case No. 5:23-cv-5105**

**T<small>IM</small> G<small>RIFFIN</small>, in his official capacity as Attorney
General of Arkansas**                                                                                    **Defendant**

### D<small>EFENDANT</small>'<small>S</small> B<small>RIEF IN</small> S<small>UPPORT OF</small> M<small>OTION TO</small> A<small>LTER OR</small> A<small>MEND</small> J<small>UDGMENT</small>

A federal court has no authority to strike a state law from the books; it only has authority to enjoin a state defendant from taking certain enforcement actions—and only when plaintiffs have carried their burden of showing specific provisions that injure them and are unlawful. Yet the Court wrongly ordered that the entirety of "Act 689 of 2023, the 'Social Media Safety Act,' is PERMANENTLY ENJOINED." Mem. Op. and Order 41, ECF No. 77. And while the Court's separate judgment altered the subject of the injunction, enjoining Defendant rather than the Act itself, the judgment prohibits Defendant from enforcing the entire Act and declares the entire Act unconstitutional. Judgment, ECF No. 78. But Defendant does not enforce the entire Act, NetChoice does not have standing to challenge the entire Act, and NetChoice did not assert arguments challenging each of the Act's provisions, so the judgment and its injunction exceed this Court's equitable powers and are overbroad. And the problems with the judgment are underscored by recent legislative action that substantially revises Arkansas law. Therefore, Defendant respectfully urges this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) to correct this clear error of law and avoid a manifest injustice.

#### BACKGROUND

Given the troubling and consistent evidence of the harm of social media to children and adolescents, *see, e.g.*, Mem. Op. and Order 6–7, ECF No. 77, Arkansas passed the Social Media Safety Act (Act 689) to protect children from the widespread dangers of social media and to prevent online sexual predators from exploiting children in online spaces by requiring reasonable age verification. NetChoice brought a broad facial challenge to Act 689, claiming that the Act violated the First Amendment and seeking permanent injunctive relief. *See* Compl. for Declaratory and Injunctive Relief, ECF No. 2; Br. in Supp. of Am. Mot. for Summ. J., ECF No. 67. NetChoice also claimed a few provisions are unconstitutionally vague. Br. in Supp. of Am. Mot. for Summ. J. 28–31, ECF No. 67. Rather than assert its own First Amendment rights or any First Amendment rights of its platform members, NetChoice based its challenge "on the First Amendment rights of users." Mem. Op. and Order 17, ECF No. 77. Defendant challenged NetChoice's standing to assert the rights of others, asserted other threshold arguments, and argued that the Act is constitutional. Def.'s Resp. to Pl.'s Mot. for Prelim. Inj., ECF No. 34; Def.'s Resp. to Pl.'s Mot. for Summ. J., ECF No. 73.

On March 31, 2025, the Court granted summary judgment for NetChoice and ordered that "Act 689 of 2023, the 'Social Media Safety Act,' is PERMANENTLY ENJOINED." Mem. Op. and Order 41, ECF No. 77. Although the Court found that the State "has a compelling interest in protecting minor children" and that the record supported "that unfettered social media access can and does harm minors," *id.* at 26, the Court found that the Act's reasonable age-verification requirements (which are codified at Ark. Code Ann. § 4-88-1402) violated users' Free Speech rights because it was a content-based restriction that did not satisfy strict scrutiny, *id.* at 33. The Court further found that the Act's definition of social media company (which is codified at Ark.

Code Ann. § 4-88-1401(7)) was unconstitutionally vague even though it "straightforward[ly]" covers "Meta, Twitter [now X], and TikTok." *Id.* at 38. The judgment declared that the Act is unconstitutional because, "if implemented," it "would violate the First Amendment rights of Arkansans" and the "due process rights of Plaintiff['s] members." Judgment, ECF No. 78. The judgment also provided that "[t]he Court hereby PERMANENTLY ENJOINS Defendant, his employees, agents, and successors in office, and all persons acting in concert with them from enforcing Act 689." *Id.*

On April 15, 2025, the Arkansas General Assembly passed Act 900 of 2025, which significantly revises subchapter 14 of Chapter 88 of the Arkansas Code. For example, Arkansas Code Annotated § 4-88-1401 now provides a definition of "social media platform" that differs substantially from the old definition of "social media company" that this Court considered unclear. *See* Mem. Op. and Order 36, ECF No. 77. It also increases protections for minors and will give parents more tools to help protect their children from the harms of social media. *See, e.g.*, Ark. Code Ann. § 4-88-1402(d)(2)(A) (allowing parents to control hours during the day when children will and will not receive notifications from a social media platform).

## ARGUMENT

Because the judgment exceeds the Court's equitable powers and there is an imminent change in law, the Court should "alter or amend" its judgment under Federal Rule of Civil Procedure 59(e). That rule gives the Court "the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quoting *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982)).

A Rule 59(e) motion is the appropriate vehicle to "draw[] into question the correctness of the judgment," *Norman v. Ark. Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (quoting *Quartana*

3

*v. Utterback,* 789 F.2d 1297, 1300 (8th Cir. 1986)), and "a district court has broad discretion to alter or amend a judgment under Rule 59(e)," *SFH, Inc. v. Millard Refrigerated Servs., Inc.*, 339 F.3d 738, 746 (8th Cir. 2003). "[T]he only real limitation on the type of the motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." Wright & Miller, Fed. Prac. & Proc. § 2810.1 (3d ed.). Among other grounds, judgments may be corrected due to "manifest errors of law" or "intervening change in controlling law." *Id.*; *see Banister*, 590 U.S. at 510 ("Consistent with the Rule's corrective purpose, [a movant] urged the court to fix what he saw as 'manifest errors of law and fact.'"); *Fund for Animals v. Williams*, 311 F. Supp. 2d 1, 5 (D.D.C. 2004) ("intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (quotation omitted)), *aff'd sub nom. Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059 (D.C. Cir. 2005). Similarly, a district court properly "alters its judgment" when events have "moot[ed]" a plaintiff's claim and deprived the "court of jurisdiction over that claim." *Fund for Animals v. Williams*, 311 F. Supp. 2d at 8.

I.  **The Judgment Should Be Altered Because It Exceeds the Court's Authority.**

Even assuming that the Court's conclusion that some provisions of the Act are unconstitutionally vague and violate the First Amendment is correct (which Defendant continues to dispute), the judgment exceeds the Court's authority. That is because NetChoice did not even articulate, much less show, that each provision of the Act is unconstitutional, so the injunction is overly broad.

It is a well-established "that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). That means "[a]n injunction must be tailored to remedy specific harm shown." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982); *see Lewis v. Casey*, 518 U.S. 343,

4

357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring) ("This Court has long held that a federal court's authority to fashion equitable relief is ordinarily constrained by the rules of equity," including the rule that "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." (quoting *Califano*, 442 U.S. at 702)). If an injunction is not so tailored, it not only runs afoul of equity, but it also could violate Article III's requirements. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek" "with the manner and degree of evidence required" at each stage of litigation. (quotation omitted)). Moreover, an injunction cannot operate against the statute itself but must be directed only at the actions of a defendant tasked with executing it. *See Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding."); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521 (7th Cir. 2021) ("A federal injunction does not erase an unconstitutional state law from existence; federal courts cannot repeal state laws."); *see generally* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018).

      The judgment here violates these well-established rules. Although the judgment directs the injunction at the Defendant (unlike the opinion, which wrongly purports to enjoin the Act itself, Mem. Op. and Order 41, ECF No. 77), the breadth of the injunction still exceeds the Court's equitable powers. The Court cannot enjoin the Defendant from enforcing the entire Act when Defendant does not enforce the entire Act, NetChoice lacks standing to challenge every provision, and NetChoice did not even attempt to show that every provision is unconstitutional.

Take, for example, § 4-88-1404. It provides a clear prohibition: "A commercial entity or third-party vendor shall not retain any identifying information of an individual after access to the social media platform has been granted." Ark. Code Ann. § 14-88-1404(a). And, if that prohibition is violated, it authorizes damages for an individual who is injured as a result of the violation. Ark. Code Ann. § 14-88-1404(b). Far from proving this provision violated the Constitution, NetChoice's summary-judgment motion and briefing did not mention this provision, so there was no showing these subsections violated the First Amendment or were unconstitutionally vague. Moreover, NetChoice did not establish standing to challenge this provision on First Amendment grounds. That is because NetChoice based its standing on the rights of platform users (a standing theory Defendant continues to dispute), Mem. Op. and Order 17, ECF No. 77, and users are not injured by this provision. There is no way that users suffer any cognizable injury from a provision that allows them to recover damages resulting from the improper retention of identifying information. *See In re Gee*, 941 F.3d 153, 165 (5th Cir. 2019) (explaining that, even assuming abortion providers had third-party standing, that does not mean "they have standing to challenge laws that help women"). At the very least, NetChoice did not offer evidence proving users would suffer injury from this provision, which means an injunction preventing enforcement of this provision based on First Amendment grounds is improper. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (explaining a plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation,'" so a plaintiff "must instead point to factual evidence" after discovery (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992)). In any event, Defendant does not enforce this provision—injured individuals do—so the Court has no authority to enjoin Defendant from enforcing it.

Section 4-88-1403(b)(1) provides another example. Because the injunction prohibits Defendant from enforcing Act 689 in toto, it prohibits him from enforcing § 4-88-1403(b)(1). But that provision simply states: "As authorized under § 4-88-103, a prosecutor may initiate an enforcement action against a social media company that allegedly violates § 4-88-1402." Defendant cannot be enjoined from enforcing a provision that does not pertain to him, especially when this provision was never challenged by NetChoice in its complaint or summary-judgment motion and when NetChoice declined to join prosecutors in the suit. Compl. for Declaratory and Injunctive Relief, ECF No. 2; Br. in Supp. of Am. Mot. for Summ. J., ECF No. 67.

Similarly, Defendant cannot be enjoined from enforcing § 4-88-1403(c), because he does not enforce that provision. Instead, that provision enables individuals to seek damages from social media companies, which means that users suffer no harm from that provision, so NetChoice cannot assert users' rights to challenge that provision.

The problems raised by enjoining these provisions betrays the larger problem with the injunction as a whole—it seeks to effectively strike the Act from the books. Indeed, how else can one make sense of enjoining Defendant from enforcing a provision, Ark. Code Ann. § 4-88-1103(b)(2), that simply gives him enforcement authority? But the Court lacks the power to strike a state law from the books. It can only issue an injunction directed towards a specific litigant that is tailored to precise harm proven, which can extend no further than necessary to remedy the proven harm. *See Califano*, 442 U.S. at 702; *Rogers*, 676 F.2d at 1214; *Lewis*, 518 U.S. at 357; *Labrador*, 144 S. Ct. at 923.

While the Court found certain provisions of Act 689 unconstitutional, such as the definition of a "social media company" and reasonable age-verification requirements, it did not find every single provision violated the First Amendment and Fourteenth Amendment. Nor could it have.

So it was error to declare them all unconstitutional. And it was error to enjoin Defendant from enforcing every provision, including provisions he does not enforce that have not been shown to cause an injury.

Furthermore, this error creates a manifest injustice here because it precludes Defendant from enforcing "duly enacted legislation" that represents the will of Arkansans even though NetChoice did not challenge every provision or show every provision is constitutionally infirm. *See Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) (whenever "a State is enjoined by a court from effectuating statutes enacted by representatives of the people, it suffers a form of irreparable injury" (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers))). It is particularly important that injunctions preventing state officials from enforcing state laws be properly limited to respect the dual sovereignty of States—especially when those laws have not yet been allowed to go into effect or interpreted by state courts. *See Shelby County v. Holder*, 570 U.S. 529, 542–43 (2013) (discussing how the Constitutional Convention rejected the proposal to grant the federal government the power to negate state laws "before they go into effect" "in favor of allowing state laws to take effect, subject to later challenge"). After all, state officials are in the best position to identify whether or not the remaining provisions can be enforced to implement the legislative purposes—not a federal court.

## II. The Judgment Should Be Altered or Amended Based on the Imminent Change in Law.

The Court should also alter or amend the judgment in light of the intervening change in law—the General Assembly's enactment of Act 900 of 2025.[1] The majority of the provisions will go into effect 90 days after the General Assembly adjourns, with the exception of section 2 of Act

---

[1] A copy of the text of Act 900 of 2025 is available on the General Assembly's website. *See* https://arkleg.state.ar.us/Bills/Detail?id=sb611&ddBienniumSession=2025%2F2025R

900, which goes into effect one year following the enactment of Act 900. This legislative development means that NetChoice's claims will soon become moot, which will deprive the courts of jurisdiction as this case will lack a live controversy. *See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61 (2d Cir. 1992) (explaining that "[c]onstitutional challenges to statutes are routinely found moot when a statute is amended"). This will eventually make vacatur of the judgment and dismissal of NetChoice's claims proper. *See, e.g.*, *Fund for Animals*, 311 F. Supp.2d at 4, 8; *Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1249 (10th Cir. 2009).

The imminent change in law highlights how the judgment is overbroad and exceeds the Court's equitable powers because the judgment enjoins Defendant from enforcing the entire Act, including § 4-88-1403(b)(2), which authorizes the Attorney General to "initiate an enforcement action" for violations of § 4-88-1402. But § 4-88-1402 has been amended, and the Court has no authority to enjoin Defendant from enforcing the amended law before there has been any challenge to, much less determination of, its constitutionality. This provides further justification for the Court to alter or amend its judgment under Rule 59(e).

## CONCLUSION

Therefore, the Court should alter or amend its judgment under Federal Rule of Civil Procedure 59(e), so that it comports with equitable powers and only addresses the provisions of the Act that NetChoice actually challenged. Assuming (for purposes of this motion only) that the Court's constitutional analysis is correct, the judgment should be revised so it (1) declares only Ark. Code Ann. §§ 4-88-1401(7)(A)(i), -1401(7)(B), -1401(8)(A), -1401(8)(B), -1401(8)(C), -

1402(a), -1402(b)(1), -1402(b)(2), -1402(c)(1), -1402(c)(2), and 1403(d)(1) unconstitutional, and (2) enjoins Defendant from enforcing only those specific provisions.[2]

        Respectfully submitted,

        TIM GRIFFIN
        Attorney General

By:    Laura Purvis
        Ark. Bar No. 2023239
        Assistant Attorney General
        Arkansas Attorney General's Office
        323 Center Street, Suite 200
        Little Rock, Arkansas 72201
        (501) 370-3085
        (501) 682-2591 fax
        laura.purvis@arkansasag.gov

        *Attorneys for Tim Griffin*

---

[2] This change should also be made because Act 689 was codified, in fact, at Ark. Code Ann. §§ 4-88-1401 to -1404, rather than Ark. Code Ann. §§ 4-88-1101 to -1104 as indicated in the Act.