**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

NETCHOICE, LLC                                                                                                         **Plaintiff**

v.                                   **Case No. 5:23-cv-5105**

TIM GRIFFIN, in his official capacity as Attorney
General of Arkansas                                                                            **Defendant**

**DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT**

NetChoice does not dispute, nor could it, that this Court's equitable power is limited, and that equitable relief should be tailored to the harm shown. Instead, it largely sidesteps Defendants' arguments and seeks to mischaracterize Defendants' arguments as being a mere severance issue that should have been raised earlier. But NetChoice ignores that it had the burden in the first instance to show that it was entitled to the relief that it sought. It failed to carry this burden, which means the Court lacked the equitable authority to enjoin Defendant from enforcing the Act in toto against everyone. And the imminent change in law underscores the overbreadth of the judgment because it could be read as enjoining Defendant from enforcing the amended law, which this Court would lack the authority to do. Accordingly, this Court should grant Defendant's motion to alter or amend its judgment under Federal Rule of Procedure 59(e).

**I.     The Judgment Should Be Altered Because It Exceeds the Court's Authority.**

As explained, even assuming NetChoice showed that some provisions of the Act are unconstitutionally vague and violate the First Amendment, it did not carry its burden to show that it was entitled to the broad relief that it sought. That means this Court lacks the authority to issue the broad relief that it did, because "a federal court may not issue an equitable remedy 'more

burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring in stay grant) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Relief must be "tailored to remedy specific harm shown," *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982); *see Lewis v. Casey*, 518 U.S. 343, 357 (1996), which this Court's injunction is not—including because it purports to enjoin enforcement of provisions that Defendants is not tasked with enforcing. *See* ECF 83 at 7.

Rather than respond to these cases, NetChoice insists (at 3–4) the relief is justified based on one case: *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021). But in that case, the Supreme Court did not bless a broad universal injunction. To the contrary, it held that "the District Court properly enjoined the law *as applied* to petitioners." *Id.* (Thomas, J., concurring) at 621; *see id.* at 619 (majority opinion) (explaining the court "correctly entered judgment in favor of petitioners and permanently enjoined the Attorney General from collecting *their* Schedule Bs" (emphasis added)). So *Americans for Prosperity* does nothing to contradict the weight of authority showing that a district court must issue relief that is tailored to the harms shown and is no broader than necessary.

NetChoice then falls back to arguing that Defendant mainly asserts a severance argument that falls outside the scope of a Rule 59(e) motion. This is wrong. Even though the effect of an order granting this motion may require certain sections of Act 689 be effectively severed from those sections permanently enjoined, that overlooks that it is NetChoice's burden, in the first instance, to show each part is Act 689 is unconstitutional and an injunction against the specific Defendant is warranted. This argument falls within the scope and purpose of Rule 59(e) and has, in no way, been forfeited. *See Norman v. Arkansas Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) ("'[A]ny motion that draws into question the correctness of the judgment is functionally a

motion under [Fed. R. Civ. P. 59(e)], whatever its label.'" (quoting *Quartana v. Utterback*, 789 F.2d 1297, 1300 (8th Cir. 1986)). In any event, NetChoice's burden to show it is entitled to relief on each challenged provision goes to standing, which cannot be waived or forfeited. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (standing must be established for each defendant, each claim, and each form of relief); *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662–63 ("As a jurisdictional requirement, standing to litigate cannot be waived or forfeited.").

Despite their arguments to the contrary, NetChoice did not carry its burden to show it was entitled to the broad relief granted. Though NetChoice may have nominally challenged the entirety of Act 689 in its complaint, it did not substantively "engage" with all sections in its motion for summary judgment, much less prove they were unconstitutional. *See Labrador*, 144 S. Ct. at 923 (Gorsuch, J., concurring in stay grant). That means enjoining Defendant from enforcing the entire Act was "an extraordinary remedy" that "clearly strayed from equity's traditional bounds." *Id.*; *see id.* at 927 (recognizing it was necessary for the State to seek a stay because "the district court prevented it from enforcing any aspect of its duly enacted law against anyone—all without any showing that other provisions in the statute violate federal law or the rights of any current party").

Furthermore, NetChoice is wrong to suggest that the provisions it did not challenge will be rendered a nullity with a tailored injunction. Take for example, § 4-88-1404(a), which forbids "[a] commercial entity or third-party" from "retain[ing] identifying information of an individual after access to the social media platform has been granted." A social media company could choose to voluntarily verify its users' ages by contracting with commercial age-verification entities and, if it did so, § 4-88-1404(a) would allow an individual to recover damages from those commercial age-verification entities if they unlawfully retained identifying information. Thus, that provision can

3

be effective—and not cause NetChoice any harm—if the Court narrowed its injunction. This underscores the reality that state officials are better positioned to identify whether or not remaining provisions can be enforced to implement legislative purposes. In sum, NetChoice provides no reason why this Court should not grant Defendant's 59(e) motion.

**II.     The Judgment Should Be Altered or Amended Based on the Imminent Change in Law.**

NetChoice has likewise failed to rebut Defendant's argument that the imminent change in law highlights how the judgment is overbroad and exceeds the Court's equitable powers. Instead, it pretends Defendant is arguing the judgment must be altered because Act 900 of 2025 will moot NetChoice's claims when it goes into effect. To be sure, Act 900 will moot NetChoice's claims on its effective date, but Defendant is not prematurely arguing mootness now, so all NetChoice's mootness arguments are beside the point. Defendant's point is simply that the amended law underscores the impermissible overbreadth of the injunction. That is because, read literally, it would prevent Defendant from enforcing § 4-88-1403(b)(2), which authorizes the Attorney General to "initiate an enforcement action" for violations of § 4-88-1402. Because § 4-88-1402 has been amended, that means the judgment could be interpreted as enjoining the Attorney General from enforcing the amended law—even though the amended law has not been challenged or held to be unconstitutional. No district court has the authority to enjoin enforcement of future laws in that fashion, which demonstrates this Court's judgement is flawed.

## CONCLUSION

Therefore, this Court should grant Defendant's motion to "alter or amend" its judgment under Rule 59(e).

4

Respectfully submitted,

TIM GRIFFIN
Attorney General


By: Laura Purvis
Ark. Bar No. 2023239
Assistant Attorney General
Arkansas Attorney General's Office
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 320-3085
(501) 682-2591 fax
laura.purvis@arkansasag.gov

*Attorneys for Tim Griffin*